# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRACY L. ANNO, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-18-23-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Tracy Lynn Anno requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: whether the decision was supported by substantial evidence, and whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-one years old at the time of the administrative hearing (Tr. 126). She completed the twelfth grade, and has worked as a vet tech, finance clerk, and truck driver (Tr. 119, 267). The claimant alleges she has been unable to work since June 19, 2015, due to depression, fibromyalgia, diabetes, gout, high blood pressure, migraines, and neuropathy (Tr. 266).

## Procedural History

On July 1, 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Christopher Hunt held an administrative hearing and determined the claimant was not disabled in a written decision dated February 21, 2017 (Tr. 107-121). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, and stand/walk/sit six hours in an eight-hour workday, but she could not climb ladders/ropes/scaffolds, although she could frequently climb ramps/stairs, stoop, kneel, crouch, and crawl. Additionally, he determined

that she could perform simple and some complex tasks and interact on an occasional basis with co-workers, supervisors, and the public (Tr.111). The ALJ thus concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, small product assembler, packer/inspector, and plastic product assembler (Tr. 119-120).

**Review**

The claimant contends that the ALJ erred by: (i) wholly failing to account for numerous medically determinable impairments noted in the record, (ii) failing to properly account for all of her impairments, including her severe impairment of fibromyalgia, in formulating her RFC, and (iii) failing to account for her obesity. The Court agrees that the ALJ erred in his analysis at step four, and finds that his decision must therefore be reversed and remanded for the following reasons.

The ALJ determined that the claimant had the severe impairments of dysfunction of major joints, fibromyalgia, obesity, and major depressive disorder (Tr. 109). The relevant medical evidence reveals that the claimant was treated for fibromyalgia as far back as 2012, and treatment notes reflect continued complaints of pain despite medication (Tr. 466, 526, 535). Medical records from July 2, 2015 indicate that the claimant had quit her job due to emotional stress and physical pain, and "active problems" included polycystic ovaries, gout, fibromyalgia, and morbid obesity (Tr. 546, 573). She was also diagnosed with PTSD (Tr. 548). The claimant's weight ranged from 329-348 pounds (Tr. 408, 415, 428, 434, 466, 536, 586, 1031, 1052).

Based on her pain, the claimant was referred for physical therapy for deconditioning from lack of activity secondary to chronic pain, and this resulted in a reduction of some pain (Tr. 1015-1016). Treatment notes from October 2016, reflect that the claimant had limited ambulation, limited range of motion, and edema (Tr. 1052, 1057). Additionally, the claimant's treating physician Dr. Vega found she had tender points on palpation, and 14/18 trigger points (Tr. 1057, 1098). An x-ray of the lumbar spine revealed mild multilevel degenerative spondylosis (Tr. 1017, 1059).

On September 24, 2015, Dr. Jimmie W. Taylor completely a physical consultative examination of the claimant. His impression was the claimant's diagnoses included history of fibromyalgia, morbid obesity, diabetes mellitus (Type II), hypertension, peripheral neuropathy, asthma by history, hyperlipidemia, gastroesophageal reflux disease, gout, and migraine headaches (Tr. 559).

On April 12, 2016, Dr. Christopher Ritchie, DPT, wrote a letter stating that he had treated the claimant for her chronic pain, but discharged her from his care because she was not making significant progress with conservative treatment (Tr. 1094). He noted that she maintained a pain level of seven out of ten, and had myofascial trigger points, along with pain and tenderness along the paraspinals on both sides (Tr. 1094).

On September 1, 2015, Dr. Teresa Horton, Ph.D., conducted a diagnostic interview and mental status examination of the claimant (Tr. 552). Dr. Horton found that the claimant appeared to adjust well in most social/emotional settings but stated that she did not adjust as well into areas that are fast-paced/densely populated (Tr. 554).

Mental health treatment records reflect that the claimant was assessed with major depressive disorder (recurrent, moderate), as well as generalized anxiety disorder (Tr. 1075).

State reviewing physicians determined that the claimant could perform the full range of light work with no additional limitations (Tr. 161, 173-175).

In his written opinion at step two, the ALJ named the claimant's severe impairments (dysfunction of major joints, fibromyalgia, obesity, and major depressive disorder), but made no mention of any other impairments - nonsevere or medically determinable (Tr. 109). At step four, the ALJ summarized the claimant's hearing testimony, and some of the medical evidence, including certain records containing the claimant's weight (Tr. 111-119). The ALJ noted the claimant's treatment for fibromyalgia for years but found that there was no actual tender point examination under January 2018, where the claimant was found to have fourteen of eighteen tender points (Tr. 114). He also summarized the findings of Dr. Horton and Dr. Taylor, as well as Dr. Ritchie's letter. As to Dr. Ritchie's letter, the ALJ found that it was contradictory to treatment notes showing an improved pain level (Tr. 117). He provided no assessment of the opinions of Dr. Horton or Dr. Taylor, but did assign great weight to the state reviewing physicians who found the claimant could perform light work, and diminished but partial weight to the state reviewing physicians as to the claimant's mental impairments because the regulations changed after their opinions were rendered (Tr. 117-118). As to the claimant's fibromyalgia, the ALJ found that no records supported her statement that she was unable to grasp and grip bilaterally, and that she had full range of motion in all extremities (Tr. 119).

Here, the claimant alleges error with regard to her anxiety, PTSD, arthritis, diabetes, asthma hypertension, GERD, gout, IBS, back pain, headaches, PCOS, neuropathy, and chronic fatigue syndrome, in that she was diagnosed with these conditions in the record but the ALJ made no mention of them at all in his opinion. Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) *and* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because the

ALJ entirely failed to consider them in his opinion, much less consider the "cumulative effect of claimant's impairments," at step four. *Langley*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Particularly as to her anxiety and PTSD, the Tenth Circuit has held that "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells v Colvin*, 727 F.3d 1061, 1068-1069 (10th Cir. 2013). "To sum up, to the extent the ALJ relied on his finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis." *Well*, 727 F.3d at 1069. This is of particular concern where, as here, there is an indication that the claimant's nonsevere mental impairment may nonetheless have had a combined effected in her ability to function. Because the ALJ failed to properly account for all of the claimant's impairments, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

The claimant further argues that the ALJ also failed to account for her severe impairments of fibromyalgia and obesity in formulating her RFC. Symptoms of fibromyalgia alone are "entirely subjective." *See*, *e. g.*, *Moore v. Barnhart*, 114 Fed. Appx.

983, 991-92 (10th Cir. 2004), *citing Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia."); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (finding the ALJ erred in "effectively requir[ing] 'objective' evidence for a disease that eludes such measurement."); *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) (noting fibromyalgia is "poorly-understood within much of the medical community [and] . . . is diagnosed entirely on the basis of patients' reports of pain and other symptoms."). *See also Gilbert v. Astrue*, 231 Fed. Appx. 778, 784 (10th Cir. 2007) ("[T]he lack of objective test findings noted by the ALJ is not determinative of the severity of [the claimant's] fibromyalgia.") [citation omitted]. Given the nature of this impairment, the lack of significant restriction in the claimant's grip strength, for example, does not necessarily mean that her fibromyalgia and the pain it causes her are not disabling and that related opinions should be discounted for this reason alone. Furthermore, although some records reflect that the claimant had a full range of motion, more recent record from Dr. Vega suggest she did in fact have a limited range of motion.

"Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993)*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). The ALJ's finding at step two that the claimant's fibromyalgia was a severe impairment "makes it impossible to conclude at step four that

her pain was insignificant." *Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003); *see also Duncan*, 1998 WL 544353, at *2 ("We note the inconsistency of finding that a pain syndrome is severe at step two and insignificant at step five."). Thus, the ALJ was required to evaluate the claimant's pain and determine the degree to which it impaired her ability to perform any work-related activities. The factors to consider include: "(1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).

Furthermore, "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC." *Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007), *citing* Soc. Sec. Rul. 02-01p, 2002 WL 3486281, at *1, *5-*6, *7; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). A proper assessment is particularly important given the impact that obesity can have on the cardiovascular and respiratory systems, as well as the musculoskeletal system, *i. e.*, the claimant's fibromyalgia, and the ALJ erred in failing to consider *all* her impairments together. *See* Soc. Sec. Rul. 02-1p, 2002 WL 346862881, at *5. *See also*

*DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ dequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p, 2002 WL 3486281, at *6.

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 6th day of March, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**